[Cite as *State v. Struble*, 2017-Ohio-9326.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2016-L-108** |
| MAX S. STRUBLE, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Lake County Court of Common Pleas, Case No. 2016 CR 000346.

Judgment:  Affirmed in part; reversed in part and remanded.

*Charles E. Coulson*, Lake County Prosecutor, and *Anna C. Kelley*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH  44077 (For Plaintiff-Appellee).

*Charles R. Grieshammer*, Lake County Public Defender, 125 East Erie Street, Painesville, OH  44077 (For Defendant-Appellant).

THOMAS R. WRIGHT, J.

{¶1}   After a jury trial, appellant, Max S. Struble, was found guilty of illegal assembly or possession of chemicals for the manufacture of drugs, count one; aggravated possession of drugs, count two; and possessing criminal tools, count three. He challenges the denial of his pro se motion to represent himself at trial; two evidentiary rulings; and contends his conviction on count one is against the manifest

weight of the evidence. The conviction on court one is reversed and the convictions on counts two and three are affirmed.

{¶2} On March 30, 2016, Patrolmen Michael Bruening and Ryan Butler of the Mentor City Police Department were engaged in a theft investigation involving various retail stores on Mentor Avenue. As part of the theft detail, the officers surveilled parking lots of stores for suspicious behavior. The officers wore civilian clothes and drove an unmarked vehicle. They were on the lookout for cars with several people, some of whom would make multiple trips into a store while the others remained in the vehicle.

{¶3} At approximately 11:30 a.m., the two officers were parked beside a Target retail store when they noticed a tan Saturn pull into the parking lot. The Saturn had four occupants, two females in the front seat, and two males in the back. The two females were later identified as Paige Tiedman and Gwendolyn Tingley. Appellant was sitting behind the front passenger seat.

{¶4} Appellant and Tiedman exited the vehicle and went into Target, while the other two remained in the vehicle. Seeing this as suspicious, Bruening followed appellant and Tiedman into the store, while Butler continued to watch the vehicle occupants. Initially, Bruening could not locate either appellant or Tiedman in the store. During this time, appellant briefly returned to the Saturn, but immediately went back into the store. After a few moments, Bruening saw appellant make a purchase at the in-store pharmacy. After the purchase was completed and appellant left the area, a pharmacy employee told Bruening that appellant purchased two boxes of Sudafed, each containing forty-eight pills.

{¶5} Ultimately, appellant and Tiedman separately returned to the car. When

the last of them exited the store, Bruening returned to his car. Since Sudafed contains pseudoephedrine, a chemical used to manufacture methamphetamine, the officers followed the Saturn a short distance to a second retail store, Lowe's.

{¶6} Appellant exited, this time with Gwendolyn Tingley. Appellant changed from a black long-sleeved shirt he wore at Target into a yellow t-shirt. Bruening followed appellant and Tingley into Lowe's. Upon catching up to them in the plumbing department, Bruening saw appellant identify a product on a shelf, drain cleaner, used in the manufacturing of methamphetamine. Appellant then left Tingley and returned to the Saturn. Bruening saw Tingley buy drain cleaner.

{¶7} Bruening and Butler continued to follow the Saturn when it left and called for assistance. Patrolman Bryan Distrelrath, operating a marked patrol car nearby, responded. When the Saturn turned onto another road, the driver, Paige Tiedman, failed to signal. Bruening and Butler thereafter instructed Distrelrath to initiate a stop. The three officers approached the Saturn, and were joined by a fourth officer.

{¶8} As Bruening and Butler approached the passenger side of the stopped car, they smelled a faint odor of marijuana. Butler asked appellant if there were drugs inside their vehicle. Appellant confirmed that he had smoked marijuana and had a marijuana pipe in his pants pocket. Butler ordered appellant to exit the car and conducted a pat-down search. In addition to the pipe, the officer found a cut straw and two small bags of white powder in his pockets. When asked, appellant said that the white powder was cocaine. Subsequent tests revealed that the powder was methamphetamine and a trace of methamphetamine was found on the straw.

{¶9} The other three occupants and the Saturn's interior were also searched.

3

As to Paige Tiedman, a coffee filter and twenty-five methamphetamine pills were found in a baggie under her dress. As to Gwendolyn Tingley, a small hand-held Eagle torch was found in her purse. As to the second male in the back seat, an empty box of Sudafed was found in his pocket. The Target and Lowe's bags were located on the floor beside appellant's feet. One of the Sudafed boxes had already been opened, the pills had been removed, and shoved into the second Sudafed box. The Lowe's bag only contained a two-pound bottle of drain cleaner. A separate box of non-pseudoephedrine Sudafed and various papers with appellant's name on them were found in a black bag.

{¶10} Appellant was ultimately indicted on three charges: illegal assembly or possession of chemicals for the manufacturing of drugs, a third-degree felony under R.C. 2925.041; aggravated drug possession, a fifth-degree felony under R.C. 2925.11; and possessing criminal tools, a fifth-degree felony under R.C. 2923.24. Since appellant was indigent, a public defender was appointed to represent him. At a pretrial held in May 2016, defense counsel informed the trial court that appellant refused to speak with her every time she met him at the county jail. In response, appellant stated that he was assuming his counsel was intelligent and could read the same discovery materials he was given, and, therefore, there was no real reason for him to speak with her. He told the court that he thought defense counsel might be working with the prosecution to delay his trial so that the prosecution could create more evidence against him. However, appellant did not ask for a new attorney.

{¶11} In the weeks following the pretrial, appellant filed copies of letters he sent to his trial counsel. In some of the letters, he asked counsel to send him copies of

4

various cases, statutes, and discovery items. In one of the letters, he instructed counsel to move to dismiss the indictment on the basis that one of the police officers involved in the traffic stop lied under oath during his preliminary hearing. The dispute centered upon whether the officers, upon initially approaching the Saturn, said they smelled marijuana or alcohol. A motion to dismiss was not filed.

{¶12} A three-day jury trial ensued. After the state presented three of its nine witnesses, appellant requested the trial court to allow him to self-represent for the remainder of the trial. In support, appellant asserted that defense counsel did not subpoena certain witnesses to testify on his behalf, and that counsel was refusing to ask questions of the state witnesses that appellant believed necessary to set forth a proper defense. He also argued that counsel refused to request that the audio portion of a dash-cam tape of the traffic stop be played for the jury when the video portion was shown as part of Patrolman Distrelrath's testimony. Appellant stated that the audio would establish that the officers only referred to an odor of alcohol during the traffic stop. After consulting with the prosecutor and defense counsel as to what the jury would hear if the audio portion was played, the trial court determined that the audio would be detrimental to appellant's case. The court denied his motion to represent himself.

{¶13} The jury found appellant guilty of all three counts. The court imposed prison terms of thirty-six months on the "illegal assembly or possession" count, twelve months on the "aggravated possession" count, and twelve months on the "criminal tools" count, consecutive for an aggregate term of sixty months.

{¶14} Appellant raises four assignments of error for review. For purposes of the

first, second, and fourth assignments he seeks a new trial only on his conviction under count one, "illegal assembly or possession." The third assignment challenges his conviction on all counts.

{¶15} "[1.] The trial court erred to the prejudice of the defendant-appellant when it admitted into evidence an NPLEx (National Precursor Law Exchange) report, in violation of his rights to due process and fair trial per the Fifth and Fourteenth Amendments of the United States Constitution and Article 1, Sections 10 and 16 of the Ohio Constitution.

{¶16} "[2.] The trial court erred when it permitted an expert to testify as to the ultimate issue to be decided by the jury, in violation of his rights to due process and fair trial per the Fifth and Fourteenth Amendments of the United States Constitution and Article 1, Sections 10 and 16 of the Ohio Constitution.

{¶17} "[3.] The trial court violated the defendant-appellant's constitutional right of self-representation as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Section 10, Article I of the Ohio Constitution.

{¶18} "[4.] The trial court erred to the prejudice of the defendant-appellant when it returned a verdict of guilty against the manifest weight of the evidence."

{¶19} Under his first assignment, appellant challenges the admission of a report regarding appellant's prior purchases of products, like Sudafed, containing pseudoephedrine. He contends that the report is hearsay and the state did not lay a proper foundation for admission under Evid.R. 805(6), the business records exception. In support, he argues that none of the state's witnesses had sufficient knowledge to explain how the report was created or maintained.

6

{¶20} The report in question was based upon records contained in the National Precursor Log Exchange ("NPLEx"), a nationwide database that tracks all purchases or attempted purchases of pseudoephedrine at pharmacies. The records are created and kept by a private company, Appriss, which receives the information from individual pharmacies. The records can then be accessed by law enforcement agencies. In regard to appellant, the report shows that he purchased pseudoephedrine products nineteen times over a four-year period.

{¶21} At trial, the state introduced the report through the testimony of a local pharmacist and an officer with the Lake County Narcotics Agency. However, citing this court's recent decision in *State v. Phillips*, 11th Dist. Lake No. 2016-L-029, 2017-Ohio-1204, the state concedes that the testimony of these witnesses was insufficient to lay an adequate foundation for admissibility. Nevertheless, the state argues that admission of the NPLEx report is harmless in light of the other evidence it presented.

{¶22} "If overwhelming evidence exists to support the defendant's conviction, however, then the error shall be deemed harmless. Crim.R. 52(A). 'Under Evid.R. 103(A) and Crim.R. 52(A), error is harmless unless substantial rights of the defendant are affected.' *State v. Hutson*, 11th Dist. No. 2007-P-0026, 2008-Ohio-2315, ¶19, citing *State v. Hicks*, 6th Dist. No. L-83-074, 1991 Ohio App. LEXIS 3856, *13, 1991 WL 156534 (Aug. 16, 1991).

{¶23} "The test is whether 'there is substantial evidence to support the guilty verdict even after the tainted evidence is cast aside.' *Id*. at ¶20, quoting *State v. Cowans*, 10 Ohio St.2d 96, 104, 227 N.E.2d 201 (1967).

{¶24} "'The Ohio test * * * for determining whether admission of * * * erroneous

7

evidence is harmless non-constitutional error requires the reviewing court to look at the whole record, leaving out the disputed evidence, and then to decide whether there is other substantial evidence to support the guilty verdict. If there is substantial evidence, the conviction should be affirmed, but if there is no other substantial evidence, then the error is not harmless and a reversal is mandated.' *Id.* at ¶21, 227 N.E.2d 201, quoting *State v. Davis*, 44 Ohio App.2d 335, 347, 338 N.E.2d 793 (8th Dist.1975)." *State v. Withrow*, 11th Dist. Ashtabula No. 2011-A-0067, 2012-Ohio-4887, ¶48-50.

{¶25} In *Phillips*, 2017-Ohio-1204, in holding that the improper admission of the NPLEx report was harmless, this court emphasized that the state's evidence at trial included the testimony of two individuals who were also involved in the illegal assembly of chemicals for the manufacture of drugs. The first witness stated that he had bought pseudoephedrine for the defendant on one prior occasion, that he knew the defendant had made methamphetamine previously, and that the defendant gave him some methamphetamine earlier on the day of their arrest. *Id.* at ¶35. The second witness stated that when the pseudoephedrine was purchased, he knew the defendant planned to use that substance to make methamphetamine. *Id.* at ¶36. In *State v. Rowley*, 12th Dist. Clinton No, CA2016-10-019, 2017-Ohio-5850, the Twelfth Appellate District similarly held that the improper admission of the NPLEx report was not prejudicial when one witness testified she and the defendant bought pseudoephedrine together on several prior occasions and made methamphetamine together.

{¶26} In contrast to *Phillips* and *Rowley*, none of the three co-defendants in this case testified that the pseudoephedrine and drain cleaner were purchased for the purpose of making methamphetamine. Instead, a finding that they were obtained to

manufacture the drug was circumstantial. Although there were other facts, such as the presence of two bags of methamphetamine in appellant's pocket, that could support an inference of the required intent, those other facts are not so overwhelming that it is certain the jury would have reached the same verdict on the illegal assembly count if the NPLEx report had not been admitted.

{¶27} Admission of the NPLEx report was not harmless and appellant's first assignment has merit.

{¶28} The second assignment submits that the trial court erred in permitting Sergeant Brad Kemp, with the Lake County Narcotics Agency, to testify as to appellant's "intent" under the "illegal assembly or possess" charge. Specifically, the expert testified that because Sudafed was purchased in conjunction with drain cleaner, appellant intended for the two items to be used to manufacture methamphetamine. Appellant maintains that the expert had already explained what chemicals were needed to make methamphetamine and the means employed by users or manufacturers to obtain them and, therefore, his "intent" opinion testimony was improper.

{¶29} In addition to being a narcotics officer for twenty-three years, Kemp primarily focused his work on methamphetamine in Lake County over the past sixteen years. During his testimony, Kemp gave a lengthy explanation of the chemicals used in making methamphetamine, the procedure for making the drug, and the various ways to ingest the drug. He further testified as to the typical behavior employed in obtaining the chemicals. Near the end of his testimony, Kemp stated that based upon his consideration of the facts of the case, appellant purchased the Sudafed to "trade to somebody or he's buying it for somebody else to be used in the manufacture of

9

methamphetamine."

**{¶30}** "Testimony in the form of an opinion or inference otherwise admissible is not objectionable solely because it embraces an ultimate issue to be decided by the trier of fact." Evid.R. 704.

**{¶31}** "While testimony on an ultimate issue to be decided by the trier of fact is not *per se* inadmissible in Ohio, it is within the sound discretion of a trial court to refuse to admit the testimony of an expert witness on an ultimate issue where such testimony is not essential to the jury's understanding of the issue and the jury is capable of coming to a correct conclusion without it." *Bostic v. Connor*, 37 Ohio St.3d 144, 524 N.E.2d 881 (1988), paragraph three of the syllabus.

**{¶32}** To generally be admissible, "expert testimony must (1) relate to scientific, technical, or other specialized knowledge; (2) assist the trier of fact to understand the evidence or to determine the fact in issue; (3) be relevant and material to an issue in the case; and (4) have a probative value that outweighs any prejudicial impact. Evid.R 702, 402, and 403." *State v. Jackim*, 8th Dist. Cuyahoga No. 92617, 2009-Ohio-6640, ¶41. As to the second requirement, expert testimony is helpful to the trier of fact when it pertains to a point that is outside the trier's experience, knowledge, or comprehension. *Id.* at ¶43.

**{¶33}** Sergeant Kemp's testimony readily demonstrates a methamphetamine user's behavior to be beyond the knowledge of an ordinary individual. Without his testimony, most would not understand the relationship between Sudafed, drain cleaner, a torch, and coffee filters. The admission of this "intent" testimony was within the trial court's discretion. *See In re Guardianship of Spagnola*, 195 Ohio App.3d 719, 2011-

10

Ohio-5602, 961 N.E.2d 730, ¶16 (11th Dist.). Therefore, his second assignment is without merit.

{¶34} Under his third assignment, appellant asserts that the trial court abused its discretion in denying his request, made at the beginning of the second day of the trial, to represent himself. He notes that, before the trial began, he told the trial court that he was concerned about the quality of representation he was receiving. He further notes that in making his request to act as his own attorney, he was provided a cogent explanation as to why he disagreed with trial counsel's strategy.

{¶35} Under the Sixth Amendment of the United States Constitution, an accused has the right to counsel. As an alternative to that right to counsel, an accused can also choose to represent himself. *State v. Houston*, 3rd Dist. Shelby No. 17-10-06, 2010-Ohio-6070, ¶7, citing *McKaskle v. Wiggins*, 422 U.S. 806, 104 S.Ct. 944 (1984). When the right to self-representation is properly invoked before trial, the denial of that right is per se reversible error. *State v. Cassano*, 96 Ohio St.3d 94, 2002-Ohio-3751, 772 N.E.2d 81, ¶32. On the other hand, if the right to self-representation is not invoked until after the trial has begun, the denial of the right is reviewed under the abuse of discretion standard. *State v. Owens*, 9th Dist. Summit No. 25389, 2011-Ohio-2503, ¶13.

{¶36} An accused's right to self-representation is not absolute. *State v. Buchanan*, 8th Dist. Cuyahoga No. 104500, 2017-Ohio-1361, ¶12, citing *Indiana v. Edwards*, 554 U.S. 164, 128 S.Ct. 2379, 171 L.Ed.2d 345 (2008). Prior to acting as his own attorney, the accused must waive the right to counsel voluntarily, knowingly and intelligently. *State v. Gibson*, 45 Ohio St.2d 366, 345 N.E.2d 399 (1976), paragraph one of the syllabus. Furthermore, the request to represent one's self must be timely made

11

and must be stated explicitly and unequivocally. *Cassano*, 2002-Ohio-3751, at ¶38.

{¶37} Appellant maintains that he first voiced his displeasure with appointed counsel at the May 26, 2016 pretrial. However, his characterization of that pretrial is slightly misleading. At the outset, defense counsel informed the trial court that her client refused to speak to her when she went to see him at the county jail. In response, appellant stated that he believed there was no reason to speak to counsel prior to the conference. He further noted that defense counsel had the same information he had through discovery, and that she should have been able to see that the state's case against him was based solely on false police statements. Appellant did not, however, give any indication that he wanted to represent himself. When the trial court asked him if he was going to allow appointed counsel to represent him, he said he had no choice but to accept her representation because he had no funds to hire an attorney.

{¶38} While appellant would not speak with appointed counsel when she came to the county jail, he mailed her at least five letters. Appellant asked counsel to send him copies of multiple legal documents. The letters also set forth demands that counsel file motions, including a motion to dismiss the indictment based upon the police officers' false statements concerning the odor emanating from Tiedman's vehicle and the items found in his pockets during the search.

{¶39} Appellant did not move the trial court to represent himself until after the state presented three of its nine witnesses. He asserted that appointed counsel was not following his trial strategy requests. Appellant emphasized that he received training as a paralegal while serving a prior prison term. Accordingly, when counsel would not heed his demands when she disagreed, he made his first request to represent himself.

12

**{¶40}** In *State v. Vrabel*, 99 Ohio St.3d 184, 2003-Ohio-3193, 790 N.E.2d 303, the defendant vacillated during the pretrial stages as to whether he wanted to represent himself at trial. After appointed counsel represented him during the first day of the trial, he asked to represent himself. The trial court denied the request, holding that he did not timely invoke. The Ohio Supreme Court affirmed holding that the "invocation of the right of self-representation can be disallowed where such a request is untimely." *Id.* at ¶50. The court relied on case law finding requests made on the first day of trial to be untimely. *Id.* at ¶51, citing *Robards v. Rees*, 789 F.2d 379, 384 (C.A.6, 1986). The *Vrabel* court stated:

**{¶41}** "In the case at bar, appellant repeatedly changed his mind as to whether he wanted to represent himself or have counsel represent him prior to trial. The trial judge went to great lengths to accommodate appellant's continual changes of mind, and it is clear that the judge avoided acting hastily to ensure a correct and just decision. The trial court had previously allowed appellant the opportunity to represent himself under *Faretta* [*v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)] and *State v. Gibson* (1976), 45 Ohio St.2d 366, 74 O.O.2d 525, 345 N.E.2d 399, until he invoked his right to counsel on the day his trial was originally scheduled to begin.

**{¶42}** "Based on our reasoning in *Cassano* and the other cases cited above we hold that the trial court did not abuse its discretion and properly refused appellant's request to represent himself after voir dire had been completed and on the first day that evidence was to be presented. Extensive voir dire had already been completed, and appellant never completely invoked his right to proceed pro se. Under these circumstances, appellant's request to represent himself on the day the state would

13

present evidence was untimely." *Id.* at ¶52-53.

{¶43} Appellant made no attempt to invoke his right to self-representation until the second day of trial, after the state had presented three witnesses. Hence, his invocation of the right was untimely and the trial court did not abuse its discretion.

{¶44} Under his final assignment, appellant argues his conviction for illegal assembly or possession of chemicals used to manufacture methamphetamine is against the manifest weight of the evidence based on his conduct in Target and Lowe's. As noted above, appellant does not contest the weight of the evidence regarding his conviction on aggravated possession of drugs and possession of criminal tools.

{¶45} "'[A] "manifest weight" challenge requires the reviewing court to play the role of a "thirteenth juror." *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541. * * * For an appellate court to overturn a conviction as against the manifest weight of the evidence, it must be found that "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Thompkins*, 78 Ohio St.3d at 387, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, * * *, 485 N.E.2d 717.' *State v. Kovacic*, 11th Dist. Lake No. 2010-L-065, 2012-Ohio-219, ¶37." *State v. Grega*, 11th Dist. Ashtabula No. 2012-A-0036, 2013-Ohio-4094, ¶70.

{¶46} The crime of illegal assembly or possession of drug chemicals is defined in R.C. 2925.041(A): "No person shall knowingly assemble or possess one or more chemicals that may be used to manufacture a controlled substance in schedule I or II

14

with the intent to manufacture a controlled substance in schedule I or II in violation of section 2925.04 of the Revised Code." R.C. 2925.041(B) emphasizes that the assembly or possession of a single chemical that is employed in the manufacturing of a controlled substance is enough to sustain a conviction.

{¶47} In claiming that the state did not sustain its burden of proof, appellant first maintains that his conviction could have been based upon mere presence in the vehicle with three drug users. However, appellant bought the Sudafed himself and participated in the purchase of the drain cleaner. Thus, this is not a case of guilt by association.

{¶48} Appellant next argues that his conviction cannot be based solely upon his purchase of Sudafed because this is innocent behavior of one with a cold or allergies. However, the Sudafed purchase is considered in the context of the other evidence. First, he acted furtively in making the purchase by going in and out of the store twice before completing the transaction. Second, appellant already had some non-pseudoephedrine Sudafed in his black bag. Third, he bought ninety-six pills at one time. Fourth, by the time of the traffic stop, appellant had already taken all of the pills from one Sudafed box and jammed them into the second box. These actions are not consistent with the behavior of someone buying Sudafed to treat a cold.

{¶49} Appellant next submits that his participation in the purchase of the drain cleaner is likewise consistent with innocent behavior. However, given that the cleaner was purchased within fifteen minutes of the Sudafed, appellant's actions could be considered criminal.

{¶50} Last, appellant notes that when Patrolman Butler removed the two bags of white powder from his pants pocket, he told the officer that the powder was cocaine. In

light of this, he claims that it must be assumed that he believed the two bags contained cocaine, notwithstanding the fact that the powder was actually methamphetamine. But, given the context of appellant's other actions, a reasonable juror could conclude that appellant was fully aware of the nature of the powder in his pocket.

{¶51} The jury did not lose its way in finding appellant guilty of count one, illegal assembly or possession of chemicals for the manufacture of drugs, and appellant's fourth assignment is without merit.

{¶52} Nevertheless, appellant's conviction for illegal assembly or possession of chemicals for the manufacture of drugs is reversed, and the case is hereby remanded for further proceeding. Appellant's convictions on the remaining two counts are affirmed.


TIMOTHY P. CANNON, J.,

COLLEEN MARY O'TOOLE, J.,

concur.