[Cite as *State v. Brewer*, 2019-Ohio-2969.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**LAKE COUNTY, OHIO**

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2018-L-136** |
| NATHAN BREWER, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Willoughby Municipal Court, Case No. 2018 CRB 01440.

Judgment: Reversed and remanded.

*J. Jeffrey Holland* and *DanaMarie Kristyna Pannella*, Holland and Muirden, 1343 Sharon-Copley Road, P.O. Box 345, Sharon Center, OH 44274 (For Plaintiff-Appellee).

*Christopher J. Boeman*, P.O. Box 583, Willoughby, OH 44096 (For Defendant-Appellant).

MATT LYNCH, J.

{¶1}    On March 7, 2018, Humane Agent, Leanne Pike, filed a Complaint in Willoughby Municipal Court against Nathan Brewer, charging him with two counts of Cruelty against Companion Animals, a misdemeanor of the first degree in violation of R.C. 959.131(B) (Count 1) and a misdemeanor of the second degree in violation of R.C. 959.131(D)(1) (Count 2).

{¶2}    On May 30, 2018, Brewer was arraigned and entered a plea of not guilty.

{¶3} Brewer was tried before a jury on October 23, 2018. The following testimony was given on behalf of the prosecution:

{¶4} Lee Stitt, a case worker for Signature Health, visited a client, Amanda Henry, at her home on 31507 Royalview Drive, Willowick, on March 12, 2018. Stitt met with Henry and Brewer in the living room while their child was eating potato chips off a table. A dog, Majestic, was sitting near Stitt. During the meeting, the dog took a chip from the child's hand. Brewer jumped up and punched the dog with a closed fist hard enough so that it yelped. The dog cowered, and Brewer grabbed it by the collar or nape of the neck. He dragged the dog to the back of the home. Although she could not see the dog, she heard "violent movement" for thirty to forty-five seconds. Brewer was swearing at the dog which was yelping and whining and crying like it was in pain. Brewer returned to the living room. Stitt concluded the appointment early and contacted the Lake County Humane Society.

{¶5} Leanne Pike, a Lake County Humane Agent, responded to Stitt's call. Pike noted that Brewer had some history of domestic violence and that there is a correlation between domestic violence and animal cruelty. On March 28, Pike visited the Willowick residence. Brewer answered the door. Pike explained that she had received a complaint that someone was abusing a dog at the house. Brewer responded that it was not true and that she must have the wrong address. Pike asked if Brewer had a dog. Brewer did not answer. Pike asked if he was Nathan Brewer and he replied, "bye," and slammed the door in her face. Pike returned to her office and found an angry voice mail from Brewer. The message was that some bitch had shown up at

his house accusing him of abusing his dog and he demanded to know who had made the complaint.

{¶6} A few days later, a woman, identified as having a "close relationship" with Brewer's mother, arrived at Pike's office with concerns about his treatment of the dog and reported that the dog had been injured on an earlier occasion. Pike then contacted Brewer's mother who confirmed the earlier injury.

{¶7} On April 10, Pike obtained a search warrant and went to the residence accompanied by four police officers. Pike impounded the dog and secured it in a van. Brewer tried to approach the van but was deflected by one of the officers. Pike then entered the home to check on the welfare of other, reptilian animals kept at the home. Brewer also reentered the home swearing, yelling, and calling her names until she completed her investigation. The dog was examined but no injuries were discovered.

{¶8} The jury found Brewer guilty of both counts of Cruelty against Companion Animals.

{¶9} On October 30, 2018, the municipal court imposed a $100 fine and 180 days in jail (165 suspended) for Count 1 and a $100 fine and 90 days in jail (25 suspended) for Count 2 in addition to 24 months of Community Control Sanctions.

{¶10} On November 29, 2018, Brewer filed a Notice of Appeal. On appeal, he raises the following assignments of error:

{¶11} "[1.] The State's comments during opening statement referencing Mr. Brewer's expected testimony violated Mr. Brewer's Fifth Amendment right against self-incrimination."

3

**{¶12}** "[2.] Mr. Brewer was denied his Sixth Amendment right to effective assistance of counsel when Defense Counsel did not object a single time after the State repeatedly introduced inadmissible and prejudicial testimony against him."

**{¶13}** In his first assignment of error, Brewer argues the prosecutor violated his Fifth Amendment right against self-incrimination by "set[ting] up the expectation in the jury's mind that Mr. Brewer would be testifying," thereby "negat[ing] the Defendant's constitutional right not to testify." Appellant's brief at 12.

**{¶14}** "Comment by the trial court or by the prosecutor upon the failure of an accused to testify in a criminal proceeding against him violates the self-incrimination clause of the Fifth Amendment made applicable to the states by the Fourteenth Amendment." *State v. Lynn*, 5 Ohio St.2d 106, 214 N.E.2d 226 (1966), paragraph one of the syllabus. Such comments are considered as a type of prosecutorial misconduct. *See*, *e.g.*, *State v. Vaughn*, 11th Dist. Ashtabula No. 2018-A-0045, 2019-Ohio-268, ¶ 37. The Ohio Supreme Court has described the relevant inquiry as "whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." (Citation omitted.) *State v. Ferguson*, 5 Ohio St.3d 160, 162-163, 450 N.E.2d 265 (1983); *State v. Webb*, 70 Ohio St.3d 325, 328-329, 638 N.E.2d 1023 (1994). The standard of review is whether the prosecutor's misconduct has denied the accused the fundamental right to a fair trial. *State v. Iacona*, 93 Ohio St.3d 83, 104, 752 N.E.2d 937 (2001).

**{¶15}** Despite having knowledge that Brewer would not be testifying at trial, the prosecutor stated as follows during opening argument:

4

We are saying under count number one, the first count, we are saying that the defendant knowingly committed an act of cruelty, unjustifiable, unnecessary causing pain. But, we expect the defendant to say, you know what, I was just disciplining the dog. That's what it was, it was a discipline. And if I went too far, okay, but I'm a great guy and I just maybe went a little too far. If that's what you think, the[n] we have a second charge that's negligence, which is a substantial lapse of due care. If you believe, if they advance the story that the defendant was just engaging in some kind of reasonable kind of training and discipline for his animal and you think he went overboard a little bit, that's negligence folks, if it caused unnecessary or unjustifiable pain or suffering. That's why there are two charges.

**{¶16}** Brewer maintains that the prosecutor's statement before the jury "to expect Mr. Brewer to testify and explain his actions knowing that the Defendant would not be testifying violated the Defendant's constitutional right not to testify in the same way that a comment in closing pointing out that the Defendant did not testify would be a violation of Defendant's constitutional right not to testify." Appellant's brief at 13. We disagree.

**{¶17}** The prosecutor's reference to what he expected Brewer "to say" rather than what he expected the defense "to argue" was not manifestly intended to create the impression that he would be testifying so that his subsequent failure to testify would be impermissibly construed by the jury as evidence of his guilt. In context, the prosecutor was merely explaining the difference between the two counts of the Complaint. Almost immediately, the prosecutor clarified that the defense that Brewer was disciplining the dog was a story that "they," i.e. the defense, might advance as a justification for his actions.

**{¶18}** In fact, this is the defense that counsel for Brewer advanced during his opening statement:

5

So you're going to hear then about a large, powerful Pitbull, about a year old, and how this animal goes up to a two-year-old child with curly brown hair and steals food from her [sic]. This is certainly not appropriate behavior, not behavior that Nathan wanted to see recurring over and over again. So he attempted to remedy the situation.

{¶19} Also significant is the fact that the prosecutor's comments took place during opening, rather than closing, argument. No reference to Brewer's failure to testify was made in summation and no suggestion was made that the defense failed to offer evidence in support of the theory that Brewer was disciplining the dog. The prosecutor's reference as to what he expected Brewer "to say" remained an isolated comment made in the course of explaining the charges rather than in argument as to what the evidence at trial proved or failed to prove.

{¶20} The first assignment of error is without merit.

{¶21} In the second assignment of error, Brewer argues that he received constitutionally ineffective assistance of counsel in violation of the Sixth Amendment. He asserts "the State (1) repeatedly asked leading questions and (2) presented inadmissible hearsay testimony, (3) presented inadmissible opinion testimony, (4) presented inadmissible testimony regarding prior bad acts, and (5) presented inadmissible expert witness testimony, over and over, without [a single] objection by Defense Counsel." We agree.

{¶22} To reverse a conviction for ineffective assistance of counsel, the defendant must prove "(1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome of the proceeding."

*State v. Madrigal*, 87 Ohio St.3d 378, 388-389, 721 N.E.2d 52 (2000), citing *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

**{¶23}** In reaching the conclusion that trial counsel's performance deprived Brewer of a reliable or fundamentally fair trial proceeding, we have recourse to the doctrine of cumulative error. "Although violations of the Rules of Evidence during trial, singularly, may not rise to the level of prejudicial error, a conviction will be reversed where the cumulative effect of the error deprives a defendant of the constitutional right to a fair trial." *State v. DeMarco*, 31 Ohio St.3d 191, 509 N.E.2d 1256 (1987), paragraph two of the syllabus. This court has recognized that "[a]pplication of the doctrine is not limited to violations of the Rules of Evidence." *State v. Burke*, 11th Dist. Trumbull Nos. 2018-T-0032 and 2018-T-0035, 2019-Ohio-1951, ¶ 141, citing *State v. Neyland*, 139 Ohio St.3d 353, 2014-Ohio-1914, 12 N.E.3d 1112, ¶ 257. We offer no opinion as to whether any of the specific instances of ineffective assistance discussed below merits reversal of Brewer's convictions. Rather, our holding rests on their cumulative effect.

**{¶24}** Also significant to the issue of trial counsel's performance is the fact that, on the day of trial, counsel filed a Motion in Limine seeking to exclude evidence of Brewer's "criminal history" and "alleged other bad acts," and, in particular, "[a]ny reference to any vet visits not stemming from * * * the March 12, 2018 incident." The Motion was argued prior to the commencement of trial. The court refrained from making definite rulings on counsel's requests. The court acknowledged that, in the presentation of the State's case in-chief, the prosecutor was "limited to the date in question * * * unless there is something in the course of the investigation that's relevant to that

7

particular [i.e., another] date." The court emphasized, however, that "I can't rule on it until it starts coming in." Again, in considering the admissibility of Brewer's prior bad acts, the court reiterated "I think I'm going to have to hear how it comes in, what exactly is said before I can rule on it." It is well-established that a ruling on a motion in limine does not preserve the record for appeal and that it is necessary to object and/or proffer as appropriate "*when the issue is actually reached and the context is developed at trial.*" (Citation omitted.) *State v. Grubb*, 28 Ohio St.3d 199, 203, 503 N.E.2d 142 (1986). Counsel for Brewer did not raise any objections at trial.

### *Leading Questions*

{¶25} "Leading questions should not be used on the direct examination of a witness except as may be necessary to develop the witness' testimony." Evid.R. 611(C). "A leading question is 'one that suggests to the witness the answer desired by the examiner.'" (Citation omitted.) *State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, ¶ 138; *State v. D'Ambrosio*, 67 Ohio St.3d 185, 190, 616 N.E.2d 909 (1993) ("[a] leading question 'instructs [the] witness how to answer or puts into his mouth words to be echoed back'") (citation omitted). "However, the trial court has discretion to allow leading questions on direct examination." *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, 900 N.E.2d 565, ¶ 149.

{¶26} The case worker, Stitt, described the underlying events as follows:

> I was speaking with Amanda, that was the first time meeting Nathan, * * * and their son was eating chips off * * * the small table in the living room * * * and the dog took the chip from the baby's hand. And Nathan * * * c[a]me over an punched the dog, brought the dog to the back of the home and continued to beat the dog. The dog was whimpering. * * * The dog was crying and Mr. Brewer was swearing at the dog. There was a lot of violent movement.

8

{¶27}  The prosecutor developed her testimony thus:

Prosecutor:  Was it yelping?

Stitt:  Yes.

Prosecutor:  Crying?

Stitt:  Yes.

Prosecutor:  Whining?

Stitt:  Yes.

Prosecutor:  Did it sound like an animal in pain?

Stitt:  Absolutely.

Prosecutor:  Okay.  Was there the sound of violent activity?

Stitt:  Yes.

Prosecutor:  Okay.  Did Mr. Brewer return to the room?

Stitt:  Yes.

Prosecutor:  Okay.  Did this go on for, this activity in the back room, did it seem like it went on for a long time?

Stitt:  It did.  It was about thirty to forty-five seconds.

Prosecutor:  Thirty to forty-five seconds.  So actually, if I time it on a watch, but that seems like an awful long time sitting here?

Stitt:  Yes.

Prosecutor:  Okay.  Did Mr. Brewer come back in the room?

Stitt:  Yes, he did.

Prosecutor:  Was his face flush?

Stitt:  Yeah.  He immediately sat down and acted like nothing happened.  Like it was normal.

9

**{¶28}** The majority of the prosecutor's questions constituted the proper development of Stitt's testimony. A few of them ("did it seem like it went on for a long time?"; "was his face flush?") were arguably leading inasmuch as they suggested the desired answer. However, we cannot say, if defense counsel had objected, that it would have been an abuse of the court's discretion to overrule the objections and allow the questions.

*Hearsay Testimony*

**{¶29}** "'Hearsay' is a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Although a trial court has discretion to determine whether a statement constitutes hearsay and whether a statement should be admitted under a hearsay exception, it is not proper for a court to allow the admission of hearsay qua hearsay. *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 97 ("[o]rdinarily, we review a trial court's hearsay rulings for an abuse of discretion"); Evid.R. 802 ("[h]earsay is not admissible except as otherwise provided by the Constitution of the United States, by the Constitution of the State of Ohio, by statute * * *, by these rules, or by other rules prescribed by the Supreme Court of Ohio").

**{¶30}** Brewer cites the following as examples of inadmissible hearsay, made during the testimony of humane agent Pike describing her investigation of Stitt's complaint:

> Pike: I eventually got ahold of Lee Stitt. There was a lot of concern on her part and on her supervisor's part of being identified as a witness in this case. She was frightened of him. She was frightened about whatever she knew about his past and what she witnessed that day.

10

Prosecutor: Did she say that she was aware of his past and that's what made her frightened?

Pike: I think some of his past, yes. She said he's a very, very angry person.

{¶31} Pike also testified to statements made by an unidentified woman claiming to be a friend of Brewer's mother and by Brewer's mother regarding a prior injury suffered by the dog:

> There was a woman who came into the Humane Society and identified herself as a family friend to Mr. Brewer's family and stated that she had concerns about Nathan Brewer. She was concerned about his behavior * * * [and] an injury that happened to the dog * * *, about how the dog was injured. * * * She did give me Nathan's mom's phone number. So I did then call * * * his mom, and I spoke with her * * * and she told me a little bit more about that previous injury that occurred to the dog the previous spring. She told me she had paid for those vet visits. * * * There was more recommended follow-up treatment that did not happen. * * * She told me about what happened to the dog, the concerns about the dog * * *. It was suspicious how the dog had the injuries that it did. She talked a lot about how the baby * * * loved the dog and the dog was very good with the baby and she had no concerns in that realm. * * * And she told me a little bit about her son's, her concerns about Nathan's behavior in the past and what she's observed.

{¶32} Pike also reported that the officers who accompanied her when the dog was seized told her they were aware of Brewer's anger issues.

{¶33} The State counters that Pike's testimony as to what other persons told her about Brewer was necessary "for the limited purpose of explaining the course of the humane agent's investigation, and to account for the 2-3 week delay between receiving the complaint and the execution of the warrant[,] * * * otherwise it would appear that the agent either neglected her duties to get the warrant in a timely manner, or she did not

11

believe that the reported conduct was serious enough to warrant prompt action."
Appellee's brief at 14-19.

**{¶34}** The State is correct "that extrajudicial statements made by an out-of-court declarant are properly admissible to explain the actions of a witness to whom the statement was directed." *State v. Thomas*, 61 Ohio St.2d 223, 232, 400 N.E.2d 401 (1980). Thus, it could be argued that at least some of the foregoing[1] did not constitute hearsay inasmuch as the out-of-court statements regarding the dog's earlier injury and concerns about Brewer's temperament and behavior were not admitted to prove the truth of the matters asserted but to explain Pike's investigation. However, "in order for testimony offered to explain police conduct to be admissible as nonhearsay, the conduct to be explained should be relevant" and "the probative value of statements must not be substantially outweighed by the danger of unfair prejudice." *State v. Ricks*, 136 Ohio St.3d 356, 2013-Ohio-3712, 995 N.E.2d 1181, ¶ 27.

**{¶35}** In the present case, the relevance of the statements is doubtful and their prejudicial effect certain. The actual evidence against Brewer was what Stitt witnessed at the Willowick residence on March 12. The humane agent's diligence in obtaining a warrant and/or her estimation of the case worker's credibility (as well as the fact of the dog's seizure) were scarcely relevant to the events of March 12. In the course of addressing these non-issues, the State was allowed to introduce out-of-court statements that the case worker and her supervisor were afraid of Brewer, the dog had suffered prior injury under suspicious circumstances (which Brewer was neglectful about treating), Brewer's son loved the dog, and Brewer's mother, family friends, and

---

1. Stitt and her supervisor's fear of Brewer had nothing to do with obtaining the search warrant nor did the belief that it was necessary to assign four police officers to protect Pike during its execution.

12

Willowick police officers all knew and had concerns about Brewer's anger issues. The failure of Brewer's trial counsel to object to any of this, either as hearsay or on the grounds of relevance/prejudice, despite his awareness (evidenced by the motion in limine) "that the introduction of this evidence could confuse the jury as to the ultimate issue in this case and distract from the March 12th incident," casts doubt on the fundamental fairness of the proceedings.

### *Opinion Testimony*

**{¶36}** During the direct examination of Stitt, the prosecutor asked her if the dog was a "loving dog" to which she responded, "yes." Stitt was subsequently asked if she thought "it was justified to do this [i.e., punch the dog]" to which she responded, "no."

**{¶37}** A lay "witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony of the determination of a fact in issue." Evid.R. 701. Such testimony "is not objectionable solely because it embraces an ultimate issue to be decided by the trier of fact." Evid.R. 704.

**{¶38}** We find nothing particularly objectionable regarding Stitt's testimony as to whether the dog was a loving dog or whether Brewer was justified in punching the dog. The opinions were based on her perception of events and were helpful in explaining her testimony regarding the proportionality of Brewer's reaction to the dog's conduct. Cruelty against Companion Animals encompasses the issue of whether "unnecessary or unjustifiable pain or suffering is caused" to the animal. R.C. 959.131(A)(2) and (B); R.C. 1717.01(B).

## Prior Bad Acts

**{¶39}** "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evid.R. 404(B); R.C. 2945.59 ("any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved * * * notwithstanding that such proof may show or tend to show the commission of another crime by the defendant").

**{¶40}** When considering the admissibility of other acts evidence for other purposes, the trial court should consider "whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence"; whether the evidence "is presented to prove the character of the accused in order to show activity in conformity therewith"; and whether "the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice." *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶ 20.

**{¶41}** On redirect examination, Pike gave the following testimony:

> Prosecutor: You were asked on cross-examination if the defendant only faced criminal matters regarding the March 12th incident. Do you remember that question?[2]
>
> Pike:        Yes.

---

2. The actual import of defense counsel's question on cross-examination was whether any charges against Brewer arose out of the execution of the search warrant on April 10. The scope of redirect examination is generally limited to matters inquired into on cross-examination although the trial court, in the exercise of its discretion, may allow inquiry into other matters. *State v. Rucker*, 2018-Ohio-1832, 113 N.E.3d 81, ¶ 59 (8th Dist.).

14

Prosecutor: Are you familiar with other criminal incidents regarding this defendant?

Pike: I am familiar, yes.

Prosecutor: So he does have other criminal matters just not -- beyond this one, right?

Pike: Correct.

**{¶42}** The State maintains that this testimony was not admitted for the truth of the matter asserted, but, as with the hearsay statement discussed above, was "properly admitted as background for [Pike's] investigation." Appellee's brief at 17. As such, it was subject to objection on the same grounds as the hearsay testimony. It is of doubtful relevance and creates the impression that animal cruelty may be the least of Brewer's criminal activity.

### *Expert Testimony*

**{¶43}** "A witness may testify as an expert if all of the following apply: (A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons; (B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony; (C) The witness' testimony is based on reliable scientific, technical, or other specialized information." Evid.R. 702. The admissibility of expert testimony is subject to the same considerations regarding relevancy and unfair prejudice as is other evidence. *State v. Williams*, 4 Ohio St.3d 53, 57-58, 446 N.E.2d 444 (1983); *State v. Struble*, 11th Dist. Lake No. 2016-L-108, 2017-Ohio-9326, ¶ 32.

15

{¶44}  During the course of her testimony, Pike offered arguably expert testimony

on the relation between domestic violence and animal cruelty:

Prosecutor:  You have had the opportunity to investigate hundreds of animal cruelty, neglect and abuse cases --

Pike:  Yes.

Prosecutor:  -- including ones with large numbers of animals?

Pike:  Yes.

Prosecutor:  Okay.  Have you been trained in how animal, how to recognize animal cruelty and abuse?

Pike:  Yes.

Prosecutor:  Are you aware of the connection between animal cruelty and domestic violence and human cruelty?

Pike:  Yes.

Prosecutor:  What is that connection?

Pike:  Other than that there is a connection in a home where there is animal cruelty, as far as physical abuse, oftentimes it is connected.  Also, physical abuse and difficulties, those kinds of things, there's been studies done on it and there's a common correlation that has been found.

Prosecutor:  So if you were investigating an allegation of somebody who harmed an animal unnecessarily and unjustifiably, would you want to look into that kind [of] background for the individual to see if there's been domestic violence-type situations?

Pike:  Absolutely.

*  *  *

Prosecutor:  What did you do next?

Pike:  At that point the message was that Mr. Brewer was known to be a very angry person.  So I started to do a little digging on my own, just to research, you know, the multiple courts, and I did find some past, you know, past cases in this court.

16

Prosecutor: Without going into the facts of the past cases, did you find something in your investigation that led you to believe, from the court records or law enforcement investigation, that led you to be concerned about domestic violence?

Pike: Yes.

Prosecutor: Okay. And did you use that as part of how you were evaluating this case?

Pike: Sure.

Prosecutor: It was related to Nathan Brewer --

Pike: Yes.

Prosecutor: -- as a suspect in that situation?

Pike: Yes.

{¶45} The grounds on which this testimony could and should have been objected to are several. The main points are summarized in Brewer's appellate brief: "Despite Ms. Pike not having been qualified as an expert witness, the State, without any objection from Defense Counsel, asked Ms. Pike to testify regarding a correlation between domestic violence and animal cruelty, and then used hearsay records of other bad acts found by Ms. Pike to show that Mr. Brewer was 'a very angry person' who was known to be suspected of domestic violence." Appellant's brief at 22. We agree that the only real purpose (or at least effect) of introducing the vague and unsubstantiated testimony of a "common correlation" between domestic violence and animal cruelty was to introduce otherwise inadmissible evidence of prior domestic violence to establish that, on March 12, Brewer acted in conformity with his character and prior conduct.

{¶46} The State counters that Brewer's trial counsel was faced with a "difficult fact pattern" and recognized that the "only hope was to allow that testimony to come

17

and go quickly," without drawing unnecessary attention to it by objecting. Appellee's brief at 16. In some cases this might be a valid point, but not the present one. The Ohio Supreme Court has recognized:

> [E]xperienced trial counsel learn that objections to each potentially objectionable event could actually act to their party's detriment. * * * In light of this, any single failure to object usually cannot be said to have been error unless the evidence sought is so prejudicial * * * that failure to object essentially defaults the case to the state. Otherwise, defense counsel must so consistently fail to use objections, despite numerous and clear reasons for doing so, that counsel's failure cannot reasonably have been said to have been part of a trial strategy or tactical choice.

(Citation omitted.) *State v. Johnson,* 112 Ohio St.3d 210, 2006-Ohio-6404, 858 N.E.2d 1144, ¶ 140. Here, trial counsel's failure to raise a single objection during the course of the trial cannot be reconciled with reasonable trial strategy or tactical choice.

{¶47} The second assignment of error is with merit.

{¶48} For the foregoing reasons, Brewer's convictions for Cruelty against Companion Animals are reversed, and this matter is remanded for further proceedings consistent with this opinion. Costs to be taxed against the appellee.

THOMAS R. WRIGHT, P.J.,

CYNTHIA WESTCOTT RICE, J.,

concur.